This case, to a certain extent, is not what it appears to be at first glance. It's not as much about a sham marriage as what it is about marriage fraud, which is distinctly defined in statute. Now, the government found most of the sham marriage cases that we've looked at turn on the burden of proof. The vast majority of the issues are whether the alien is applying for affirmative relief, discretionary relief, and it's their burden to show it. This case is a deportability ground. Marriage fraud, in terms of the deportation statutes, in terms of the inadmissible time of entry for fraud misrepresentation, is, in fact, defined in the INA at 237A1G. And it's a specific definition that applies to what needs to be proven. The statute, an alien shall be considered to be deportable as having procured either visa or documentation by fraud, within the meaning of 212A6CI, which is the fraud statute, and to be in the United States in violation of this chapter within the meaning of subparagraph B. Those are both of the charges in this case. The alien obtains admission based upon marriage, and the marriage is judicially annulled or terminated within two years. In this case, they are still married. There's an exception here if the alien firmly establishes a bona fide marriage, but that doesn't apply. But the second prong, the alien has failed or refused to fulfill the alien's marital agreement, which, in the opinion of the Attorney General, was made for the purpose of procuring the alien's admission as an immigrant. The statute, and there's a case on it, Nakamoto, requires that there be an agreement. There's two things that have to be proven in that context to establish marriage fraud, that there was, in fact, a marital agreement, and, second, that that marital agreement was made for the purpose of getting their admission into the United States. This case, there was no marital agreement, and it certainly has not been breached because they are married. They are living together as the investigating official determined. That's what you mean by marital agreement. They are married. Yes. So, obviously, there was an agreement to marry. Okay. If that's the agreement, then there was an agreement to marry, and they're still married and living together with love and children. So then the question is, is the agreement to marry entered into for the purpose of admission to the United States? We wouldn't read it that way because it has both of them. In the language of the statute, the alien has failed or refused to fulfill the alien's marital agreement, which, in the opinion of the Attorney General, was made for the purpose of procuring. But that's not how we've interpreted that statute. So we're bound by our interpretation of the statute. I think in Nakamoto, there was, in fact, the agreement was the purpose for coming in. Whether or not a sham marriage or whether or not simply coming in for the purpose of getting their entrance in the United States as a sham marriage is clearly, under the case law, clearly is not because there are many reasons. As the court said in Oriana Blanco, simply motivation to get a green card is not, by enough, proof of a sham marriage. Yeah, we look at whether or not there's a bona fide marriage. Whether, you know, if there's a bona fide marriage and the person married in order to get a green card, that's fine. But if the marriage is not, in the opinion of the Attorney General, a bona fide marriage, then it's considered to be a sham marriage. That's what our cases say. Well, I agree. But I think under this statute, there has to be a breach of the agreement first. That's a threshold question because it has failed or refused to fulfill the alien's marital agreement. The case says that there has to be a breach of the agreement before there can be a finding of a sham marriage. Do you have a case? Well, there's Nakamoto v. Ashcroft. It doesn't say that. 363F3D. What it is, under this statute, under this particular statute, that the definition of proving marriage fraud under as it was charged here. A sham marriage, there's many different contexts. The Act defines different types, different language in terms of criminal and this. For example, under criminal, entering into a marriage solely for purposes of evading the immigration law. But this statute has specific language. The alien has failed or refused to fulfill the alien's marital agreement, which in the opinion of the Attorney General was made for the purpose of procuring. In this case, if there's no breach of the agreement, the sham marriage is not enough. Thus, now it can, in a deportation context, instead, if the government is not required to prove a sham marriage, they can go under the general generic fraud misrepresentation statute and point to a specific representation or statement or document made willfully and which was material. In this case, there was only a sham marriage finding. There was no specific representation because they had no evidence that there was no point where, unlike what the BI and the IJ found and the BI said, where the alien stated, stated it was that he did not enter into a good faith bona fide engagement or marriage. He didn't say that representation. He never represented that. In the end, though, even if it does go there, that it is a sham marriage, I think under any definition this decision is just inherently wrong. The entire evidence, the real evidence here was the bedroom inspection by a government officer, going through the drawers, going through the bed, the bed stand, going through the bathroom, and not finding any objects that he thought would prove that it was a bona fide marriage. Plus testimony by the children that the father didn't sleep in the same room as the mother. Well, at that particular time, some of us have slept on the couch, are married. Newlyweds. Newlyweds. Sometimes particularly newlyweds. Yeah, and sometimes, you know, there are explanations. I mean, it requires speculation as to the motivation here, but the fact remains is the officer concluded they were living together, and they were living together with 11 extended family members, her children by the previous marriage, his children, their grandchildren. He's the patriarch of this household. Well, the patriarch doesn't mean that they're married. Maybe the grandfather could be a patriarch without a grandmother. Fair enough. But the family is formed. They've established a life together. Whether or not they're having sex, I think, is beyond the inquiry allowed by Griswold and Rowe and Graham v. Richardson. This officer's actions in going in there and trying to base it upon that, certainly even going in there, is, I think, not what is necessary. If it does go to a sham marriage, going back to Bark, is the intent to establish a life together. And they clearly have. They are living together. They have joint mortgage. They have the objective evidence of the intent to establish a life together. The officer concluded they're living together. Everything is here. What do they have to say that maybe it's a – what evidence do they actually have to say that they go to that intent of their – their intent to establish a life together? They have, you know, an inconsistency, which is kind of dubious, about when they first started dating, 82 or 92, without a translator. What do you think if there was an intent to deceive about whether they were living together? If the – I don't remember what it was. I think the purported husband said he was sleeping in the same room, and then it turns out he's not. Is that irrelevant? Well, I think where he's sleeping, maybe he was embarrassed. I think the question where he's – Why would he be embarrassed to be sleeping in the same room as his wife? That he wasn't. We don't know. That's speculation. There could be reasons. The thing is, they have established a life together. Whether they're sleeping together at a particular time or not, and what they say about it, does not establish their intent back then. The fact is, to establish the intent to form a life together at the time – But our cases say that the later actions manifest the earlier intent. Correct. The fact that they are living together, they have formed a life together, they have a joint mortgage, the objective evidence, which is what Barck and all the cases have gone through, the objective evidence after the fact of the life together. Maybe they don't have sex. Maybe they don't want to. We don't know. That is not a permissible inquiry. That goes into the zone of privacy, which Griswold does not allow the governments to go investigating into the bedroom to determining the marital relationship. When did they get the mortgage? Was it before or after the investigation? I don't know. I don't know. She already had the house when he came. And they put him on it. She put him on her house. That's an interesting concept. I'll reserve the rest of my time. May it please the Court. Nancy Cantor on behalf of the Attorney General. The only issue this Court must decide today is whether the agency's determination that petitioner's marriage to his putative wife was not a bona fide marriage is supported by substantial evidence. Let me ask you this. The argument you just heard focuses on whether there was marriage fraud within the meaning of INA subsection A1G. Is that the question in front of us? I don't believe so, Your Honor. The agency below determined that petitioner was removable under INA 237A1A, willful misrepresentation of a material fact. And as the Board properly found, the notice to appear charged as a grant of inadmissibility, INA 212A61, which encompasses fraud or willful misrepresentation of a material fact. And so what's the material fact that was misrepresented? Material fact, whether or not petitioner and his wife were engaged to be married, to enter into a marriage so that petitioner could enter the United States. By that, you mean a bona fide marriage? Exactly, Your Honor. The question is whether or not they intended to enter into a bona fide marriage so that petitioner could ultimately gain lawful status in the United States. And why do you think there's no, that they didn't intend to enter into a bona fide marriage? Well, Your Honor, I think the facts of this case resoundingly show that the marriage was not a bona fide marriage. There were a number of inconsistencies both in the documentary evidence as well as the testimonial evidence, including when they married, whether or not petitioner was in contact with his ex-wife, the number of children he had varying from two to three, whether or not he resided at the address, whether or not they slept in the same room, whether or not he had been entered onto, as Your Honor previously asked, whether or not he had been, whether or not they had joint accounts and joint statements. The evidence of joint utility bills and mortgage statements, taking out the home equity loan on the house, was all evidence that was after the home site visit. All of the evidence that was offered establishing that they resided in the address was only after Sith had already issued notice that they intended to deny his I-485. Here's my problem with this case. In a sort of a commonsensical way, all the evidence that you're pointing to does suggest that this is not in any sense a conventional marriage. And it also suggests that the reason for entering into this arrangement, whether we call it a marriage or not, was in order to allow Mr. Fong to come into this country. But we start out from the proposition that a marriage in order to obtain immigration status, assuming it's a proper marriage, is permissible. We've got a fair amount of case law that says, you know, marriage for money, marriage for all kinds of things other than love, is nonetheless a marriage. Judge Kleinfeld wrote a couple of cases on that point. So the mere fact that the marriage might have been entered into for purposes of immigration does not necessarily disqualify it as a qualifying marriage for coming in. Then we get to the point of, okay, well, what is a marriage? And we've got a fair amount of case law that says, you know, marriage means lots of different things. It does not necessarily include sexual relations. It doesn't even necessarily include living in the same house. It doesn't necessarily include even liking each other. So why isn't this a marriage given the breadth of our definition of marriage? I mean, we do know they're living in the same house. We do know that the relationship between them is amicable. In fact, that's part of the government's case, that they are cooperating here in order to allow him to stay in the country. So why isn't this a marriage? Well, I understand Your Honor's concerns. And in response to that, I'd like to direct the Court's attention to the Oropesa-Wong v. Gonzalez, 406 F. 3rd, 1135. In that case, the petitioners had significantly more evidence than the petitioner in this case. They had jointly filed tax returns, leased four apartments, canceled checks, telephone bills, joint applications for life insurance, and significant evidence. Ultimately, the agency based its denial, its determination that there was not a bona fide marriage on unexplained inconsistencies in the documentary evidence and the lack of corroborating testimony. I think to answer directly Your Honor's concerns, there are certain things that, certain objective indicators, which both the agency needs to be able to look at to determine whether or not there is a bona fide marriage, whether or not there is an intent to establish a life together as a husband and wife. You see, but a life together, they seem to be together in the sense of living amicably under the same roof. And as husband and wife, then we're back to the question of, okay, what do you mean by marriage? Here's my problem. The commonsensical reading of marriage or bona fide marriage is pretty much as you're advancing it. But we've got case law that defines marriage for this purpose so broadly that I have trouble understanding what is not a bona fide marriage so long as they appear to be living somehow under the same roof, maintaining some relationship. It's not like that old Litvak case where as soon as they come in, they never want to see each other again. No, they're hanging out together. I take the government's evidence that there's a fair amount of lying going on because they may think that the government's definition of marriage is a narrow one. I take the government's evidence that they don't sleep in the same bedroom. It seems to me that they do not.  There needs to be something the agency can look at in determining whether or not there is a bona fide marriage that sets a married couple, a bride and groom, husband and wife, apart from roommates who are simply living together under the same roof. In this case, there's not – I can't think of a single piece of evidence that puts petitioner and his putative wife – moves them away from the category of just roommates or two very good friends who happen to be living together. If we take this case outside of immigration and take two American citizens, particularly this happens with older people who have either been divorced or their spouses have died or whatever, they will often either enter into a marriage or not enter into a marriage based upon various forms of estate planning and tax consequences and so on with absolutely no intention of even moving in together. I don't think we call that a phony marriage. I don't think we call that a phony marriage, Your Honor, but I think we have called it. I can think of having called circumstances like that as marriages of convenience. Well, yeah, but the charge here is not that a marriage of convenience is a sham marriage. I mean, any marriage to enter into – any time somebody enters into a marriage in order to reincur, that sounds to me like a marriage of convenience. And it doesn't make it any less a marriage of convenience that they might happen to fulfill the requirements that the government might impose of you have to have sexual relations, you have to live together and so on. If you say this is a marriage of convenience, you're saying it's a marriage. Well, it's a marriage for a purpose. Well, I think the difference is if you have a marriage that is not intended to survive but is intended for another purpose and it's not only intended for another purpose but it's a short-term purpose, then you could say it's not a bona fide marriage, I think. But to say that it's a marriage of convenience, I mean, Judge Fletcher gave you an example which applies to a judge who happened to be on our court and has a building named after him who married his secretary so that she could have his insurance. And I don't think they had sex, not knowing him, but it was considered a marriage. But, Your Honor, the INA prohibits two individuals from entering into the marriage for the express purpose of obtaining a green card. There is no law that I'm aware of that prohibits parties from entering into marriages to get insurance. May I change the question? Not the subject, just change the line of questioning momentarily because I think we're straying from the immigration context. But was there evidence from the adult daughter of the mother that affected the decision by the immigration officials? Absolutely, Your Honor. Upon entry by the SIS officer, Officer Shrine, the adult daughter, Trang, was present at the house and on her own volunteered the information that Petitioner and his wife were sleeping together upstairs, which, as we know, the record establishes later on was false. The adult daughter also, when asked why did your mother marry into a fraudulent marriage, attempted to explain why the marriage was fraudulent, stating that circumstances are. Wait a minute. That sounds like a leading question. When did you stop beating your wife? Why did your mother enter into a fraudulent marriage? If she opens her mouth and doesn't say it wasn't fraudulent, you're saying that that's a confession that was fraudulent? I don't think it's a confession, but it's a good indication. It is an indication of potential, well, in your circumstance, it is an indication of potential guilt or liability, and in this case it was both. I take it as a given that the government is right, that there's a fair amount of lying going on, not merely by Mr. Fon, but the entire family, because they are fearful that the government's understanding of marriage is the proper understanding, and so they're trying to fit within it. But my question is, taking the evidence as the government would describe it, that is to say, the marriage as the government would describe it, my question is, how do I get my common sense notion of what is a marriage fit into our case law? Because I think it is established law, under our case law, that the mere fact that someone enters into a marriage in order to get a green card does not make that a sham marriage. But our case law doesn't say, does it, that you can use material misrepresentations to do that. Our case law doesn't say that. In fact, the case law instructs the court, instructs the agency to look at all of the objective factors to determine subjective intent at the time they entered into the marriage. But you see, intent to do what? Unless you're disagreeing with me, the double language will get mixed up, so let's just do it as cleanly as I can. Let me advance a proposition, and you can tell me whether you think that's true or not. My proposition is, an American citizen marries an alien in order to allow the alien to get a green card. After the marriage, they live together, they have sexual relations, have a child, they file joint tax returns. Is that a sham marriage? I can't speak, Your Honor. Well, you know the answer to that. If the express purpose is for the alien to obtain a green card, and that is the only reason why they're entering into marriage, I think under the court's case law that would be determined not to be a bona fide marriage. Let me add, and they live together for 20 years. They come even to like each other after a time. Do you still say it's a sham marriage? Well, I think Your Honor might be talking about Damon v. Ashcroft, in which it's understandable that the party's position can change. A person can arrive into the United States on an engagement visa, come to the United States, meet their putative spouse, get married, get to know the person, and decide, I really don't want to live with you. And I'm not saying that is not a sham marriage, because at the time they entered the United States and obtained the K-1 visa, they intended to get married and establish a life together as husband and wife under this case law. The fact that Your Honor presented was the intent was to have a green card. The intent was to obtain a green card, and I think under this court's case law. It happens all the time. You get these lonely old guys responding to advertisements. You get these women who want to come into the United States and become lawful permanent resident aliens. There's a marriage. You know, the government doesn't go after them. It depends on the circumstances of the case, doesn't it? Our charge is to determine whether or not there's substantial evidence in this case, not to determine in the first instance. Absolutely. So, you know, the evidence has to compel a different conclusion. So what's your response to the question if you look at it from the substantial evidence standard of review? Well, Your Honor, I don't think there's a single piece of evidence in the record here that would compel the conclusion that Petitioner and his wife are married. And I believe that from the questions I've answered today, the court agrees with that. I'd like to direct the court's attention again to Oropeza Wongi-Gonzalez. In that case, there was significantly more objective evidence in the record establishing that the parties were or, you know, fit within the definition of a bona fide marriage. Much more significant evidence than in this case. The agency determined, though, based on numerous inconsistencies in the record and lack of corroborating testimony, that wasn't a bona fide marriage. And the court, quote, although it might be possible to reach a contrary conclusion on the basis of the record, under the substantial evidence standard, the evidence presented does not compel a finding that Petitioner entered into a bona fide marriage. I think based on the record below, the numerous inconsistencies, as the court said, there's no question that there's been a fair amount of lying by both Petitioner's putative wife and the family members. There's nothing in the record that compels a contrary conclusion. And unless the court has any further questions. Thank you. Thank you. I think we can address that. This is not a case. Oropesa Wong was about an alien who was affirmatively applying for a waiver of the failure to, for the waiver of the, when the conditional residence was terminated. The burden in that case was Oropesa. This case, this is deportability. Charged with deportability. The government's evidence. Their burden of proof is to prove, even if just proving a sham marriage in this case was sufficient. We don't believe so. But even if that was sufficient, their burden, if they could do that, prove by clear, convincing and unequivocal evidence the charge. The burden is here. Now, the only way the conclusion can be reached that, in fact, the intent at the time of the marriage, based on the fact that they'd been living together, they'd have the families that it was this, would be based on speculation and inference as to their intent. Because the objective indica, the fact that they're living together, the fact that they have, they've economically commingled all their assets, I think in this case clearly precludes the government without some sort of compelling direct testimony as to their intent, if that would even be sufficient. Because the burden here is on the government. And I think that distinguishes it. And they have nothing. They haven't. They have, you can speculate. We can guess. We can say, yeah, we think it is. We can do that. But the burden of proof is on the government in this case. And it's a high one. It's a very high. Thank you. Thank you, counsel. The case case target will be submitted the next day.
judges: Reinhardt, Fletcher W. , Rawlinson